## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**SHYRL BAGNERIS, et al.**                                    **CIVIL ACTION**

**VERSUS**                                                    **NO. 10-3357**

**CHRISTOPHER DORSEY, et al.**                               **SECTION: "G" (4)**

### ORDER AND REASONS

This litigation arises out of Defendants' filming of a music video on Plaintiffs' property without Plaintiffs' permission. Before the Court is Defendant Empire Fire & Marine Insurance Co.'s ("Empire") Motion for Summary Judgment,[1] wherein Empire asserts that "there is no insurance coverage afforded by the Empire policy for the plaintiffs' claims that a rapper trespassed on their land and then published a rap video that showed their house for a couple of seconds."[2] For the reasons that follow, the Court denies the pending motion.

### I. Background

#### A. Factual Background

Plaintiffs are Shyrl and John Bagneris, who own a residence at 5139 Easterlyn Circle, New Orleans.[3] Defendants are Christopher Dorsey (a hip hop artist also known as "B.G."), Entertainment One U.S. LP ("Entertainment One"), Chopper City Records, LLC ("Chopper City Records"), Gabriel Hart ("Hart"), Taj Lewis ("Lewis"), and Empire (collectively, "Defendants").[4]

Plaintiffs allege that on or about October 8, 2009, Defendants, with a film crew of about forty individuals, entered upon the property and residence of Plaintiffs in order to film a music video for a

---

[1] Rec. Doc. 115.

[2] *Id.*

[3] Rec. Doc. 1 at ¶ 1.

[4] *Id.* at ¶ 2

1

rap song performed by Defendant Dorsey, entitled "My Hood."[5] According to Plaintiffs, without receiving Plaintiffs' permission or obtaining any local permits, "defendants captured and exploited extensive footage" of Plaintiffs' house and property.[6] Furthermore, Plaintiffs contend that Defendants "have acted to reproduce and distribute the music video which includes exclusive footage of plaintiffs' home without authorization."[7] Plaintiffs assert that Defendants have disregarded Plaintiffs' demands to stop using the allegedly unauthorized images of Plaintiffs' property.[8] They further aver that Defendants have not provided any payment to Plaintiffs for filming on their property or for distributing images of Plaintiffs' property.[9]

According to Plaintiffs, Defendant Hart directed the music video at issue in this litigation,[10] and both Plaintiffs and Defendant Empire agree that Defendant Empire issued a liability insurance policy to Defendant Hart.[11]

**B. Procedural Background**

On October 5, 2010, Plaintiffs filed a complaint asserting a claim for damages pursuant to the Latham Act of 1946,[12] as well as Louisiana state law causes of action for misappropriation, unjust

---

[5] *Id.* at ¶¶ 11, 16.

[6] *Id.*

[7] *Id.* at ¶ 11.

[8] *Id.* at ¶¶ 17–18.

[9] *Id.* at ¶ 18.

[10] Rec. Doc. 122-1, Plaintiffs' Statement of Material Facts, at ¶¶ 5.

[11] *Id.* at ¶6; Rec. Doc. 115-4, Defendant's Statement of Undisputed Material Facts, at ¶ 15.

[12] *Id.* at ¶ 14. In particular, Plaintiffs assert that Defendants have violated the portion of the Act codified at 15 U.S.C. § 1125(a). *See id.*

enrichment, trespass to land, and intrusion on seclusion.[13]

Since the filing of Plaintiffs' complaint, four of the six defendants have been dismissed. On July 18, 2012, the Court dismissed Plaintiffs' claims against Defendants Gabriel Hart and Taj Lewis without prejudice, following Plaintiffs' failure to serve those defendants.[14] On January 18, 2013, the Court dismissed Plaintiffs' claims against Chopper City Records with prejudice,[15] upon a motion for voluntary dismissal filed by Plaintiffs.[16] Finally, on November 11, 2013, the Court dismissed Plaintiffs' claims against Entertainment One with prejudice,[17] upon a joint motion for dismissal filed by Plaintiffs and Defendant Entertainment One.

With respect to Defendant Dorsey, on March 28, 2012, Plaintiffs filed a Motion for Entry of Default.[18] The Clerk of Court entered the entry of default on June 28, 2012.[19] Plaintiffs then filed Motion for Default Judgment on April 18, 2013.[20] The Court denied Plaintiffs' motion on November 15, 2013,[21] due to Plaintiffs' failure to properly serve Defendant Dorsey, who is currently incarcerated, pursuant to Louisiana Code of Civil Procedure Article 12351.1, specifically dictating the proper method of service upon an incarcerated individual.

---

[13] *Id.* at ¶¶ 24–28.

[14] Rec. Doc. 75.

[15] Rec. Doc. 89.

[16] Rec. Doc. 87.

[17] Rec. Doc. 129.

[18] Rec. Doc. 70.

[19] Rec. Doc. 74.

[20] Rec. Doc. 98.

[21] Rec. Doc. 132.

On October 11, 2013, Defendant Empire filed the pending Motion for Summary Judgment.[22] Plaintiffs filed a memorandum in opposition on November 4, 2013.[23] With leave of the Court, Defendant Empire filed a reply to Plaintiffs' opposition on November 4, 2013.[24]

## II. Parties' Arguments

### A. Defendant's Argument in Support

According to Defendant Empire, summary judgment is appropriate because "even if all of the facts that Plaintiffs allege are true, Empire would not provide coverage to Hart under the insurance policy and plaintiffs' claims should be dismissed, with prejudice, at plaintiff's [sic.] cost."[25]

Defendant Empire acknowledges that in October 2009, it issued to Defendant Hart "a Commercial General Liability insurance policy," which "provides coverage for liability for bodily injury or property damage, as well as liability for personal and advertising injuries."[26] Under "Coverage A," the policy provides that Empire "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."[27] The policy further states that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.'"[28] In turn, the policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the

---

[22] Rec. Doc. 115.

[23] Rec. Doc. 122.

[24] Rec. Doc. 121.

[25] Rec. Doc. 115-1 at p. 5.

[26] *Id.* at p. 8.

[27] *Id.* at p. 9.

[28] *Id.*

4

same general harmful conditions."[29]

Defendant Empire also points out that there are a number of exclusions to coverage under "Coverage A." Specifically, the insurance does not apply to "Expected Or Intended Injury," defined as "'Bodily injury' or 'property damage' expected or intended from the standpoint of the Insured."[30] It also excludes "'Bodily injury' arising out of 'Personal and Advertising Injury,'"as well as "'Bodily injury' or 'property damage' arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance, or regulation . . . that prohibits or limits the sending transmitting, communicating or distribution of material or information."[31]

Defendant Empire further states that under Coverage B, the policy provides that Empire "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies."[32] The policy also lists a number of exclusions to "Coverage B." Specifically, the insurance does not apply to "Knowing Violation of Rights of Another," or "'Personal and advertising injury' caused by or at the direction of the Insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"[33] It further excludes "'Personal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny statute, ordinance, or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or

---

[29] *Id.* at p. 12.

[30] *Id.* at p. 9.

[31] *Id.* at pp. 9–10.

[32] *Id.* at p. 10.

[33] *Id.*

information."[34]

Having laid out the particular policy provisions, Empire turns to its argument that there is no coverage under "Coverage A" of the policy. First, Empire maintains that there was "no 'occurrence'" because "there was no 'accident.'"[35] Defendant Empire contends that according to Plaintiffs' Complaint, "the defendants intentionally trespassed on their property."[36] It cites Plaintiffs' allegations in the Complaint that "defendants committed the above alleged acts **willfully**"[37] and that "Defendants [sic.] intent to enter the property of the plaintiffs . . . represents **an intentional tort of trespass to land.**"[38] Thus, Defendant Empire concludes that "defendant did not 'accidentally ' happen upon the [plaintiffs'] property so there is no coverage as there was no 'occurrence.'"[39]

Next, Defendant Empire asserts that there is no coverage under "Coverage A" for intentional torts, as "[t]he Empire policy does not apply to 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."[40]

Third, with respect to "Coverage A," Defendant Empire contends that the policy does not cover injuries arising out of a violation of a statute "that prohibits or limits the sending, transmitting, communicating or distribution of material or information." Defendant Empire avers that "[h]ere, the plaintiffs claim injury/damages caused by the transmittal, communication or distribution of the rap

---

[34] *Id.* at p. 11.

[35] *Id.* at p. 12.

[36] *Id.*

[37] *Id.* (emphasis in original).

[38] *Id.* (emphasis in original).

[39] *Id.* It appears that in its memorandum, Defendant Empire mistakenly refers to "defendants' property" rather than "plaintiffs' property."

[40] *Id.* at p. 13.

video that showed their house for a couple of seconds" under the Latham Act.[41] According to Defendant Empire, "[t]hat claim is not covered because of this exclusion."[42]

Finally, Empire points out that "Coverage A" excludes "'Bodily injury' arising out of 'Personal and Advertising Injury' and 'Personal and Advertising Injury' coverage and exclusions are provided in Coverage B of the Empire policy."[43]

Turning to "Coverage B," Defendant Empire argues that "Coverage B of the Empire policy, like Coverage A, specifically excludes intentional acts from coverage."[44] Additionally, Empire asserts that Coverage B "exclude[s] coverage 'arising out of a criminal act committed by or at the direction of the insured,'" and according to Empire, "[t]he plaintiffs are complaining a criminal act [*i.e.*, trespass] and the Empire policy does not provide coverage for criminal acts."[45] Finally, Defendant Empire contends that under "Coverage B," there is "no coverage for infringement of trademark or other intellectual property rights," or for "distribution of materials in violation of statutes."[46]

In conclusion, Defendant Empire avers that:

[T]here is no reasonable interpretation of the insurance contract that supports the position that any of the plaintiffs' allegations are covered by the terms of the policy as there is no coverage for the intentional acts and/or criminal acts of Hart in trespassing on the plaintiffs' property to make a rap video and distributing the rap video.[47]

### B. Plaintiffs' Argument in Opposition

---

[41] *Id.* at pp. 13–14.

[42] *Id.* at p. 14.

[43] *Id.*

[44] *Id.* at p. 16.

[45] *Id.* at p. 17.

[46] *Id.* at p. 18.

[47] *Id.* at p. 19.

In opposition to Defendant Empire's motion, Plaintiffs argue that "[u]nder Coverage A of insured's policy, Empire is obligated to pay those sums that insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' defined as an accident."[48] They further aver that "[p]roperty damage includes the damage incurred to another's property that was at the time being occupied by insured."[49] According to Plaintiffs, "Empire argues that insured's action represented no 'occurrence' because it was no 'accident.'"[50] More specially, Plaintiffs characterize Defendant Empire's argument as being that "defendants, specifically Mr. Hart, did not accidentally happen upon [plaintiffs'] property and therefore they are under no obligation to provide coverage as there was no 'occurrence.'"[51]

Plaintiffs assert that Defendant Empire's argument is misplaced:

> With discovery complete, there is zero evidence to support that insured Mr. Hart, did not accidentally happen upon [plaintiffs'] property.[52] In fact, evidence, including the call sheet ("Exhibit A") more appropriately reflects that insured's presence on plaintiffs' property was indeed an accident.[53]

According to Plaintiffs, "[i]t cannot be disputed that Mr. Hart has not provided any testimony, via affidavit or otherwise, that his intent on the day of the incident was anything but an accident."[54] Plaintiffs thus assert that "a genuine issue of material fact exists and therefore defendants [sic.] Motion

---

[48] Rec. Doc. 122 at p. 3.

[49] *Id.*

[50] *Id.*

[51] *Id.* It appears that in their memorandum, Plaintiffs mistakenly refer to "defendants' property" rather than "plaintiffs' property."

[52] Again, it appears that in their memorandum, Plaintiffs mistakenly refer to "defendants' property" rather than "plaintiffs' property."

[53] Rec. Doc. 122 at pp. 3–4.

[54] *Id.* at p. 4.

for Summary Judgment should be denied."[55]

As for Defendant Empire's argument that "in the alternative that there would be no coverage based on the exclusion that there is no coverage of intentional tort," Plaintiffs argue that "[a]gain Empire has failed to submit any factual evidence in support thereof."[56]

Turning to Defendant Empire's assertion that "they are under no obligation to provide coverage in connection with insured for violating a transmission, communication or distribution statute," Plaintiffs aver that "[t]his defense is not germane to the claims against Empire as insurer of Mr. Hart as plaintiffs do not allege that Empire or Mr. Hart distributed material in violation of statutes."[57] Plaintiffs also point out that "Empire again in the alternative alleges they are not obligated to provide coverage under Coverage A for 'bodily injury' arising out of 'Personal and Advertising Injury' although plaintiffs make no claim in connection with 'Personal and Advertising Injury.'"[58]

Finally, Plaintiffs aver that they "assert no claims under Coverage B," making this portion of Defendant Empire's argument irrelevant.[59]

Plaintiffs conclude stating that "[e]vidence has been presented in support that Hart's action represented an occurrence under the policy whereby property damage was sustained."[60]

### C. Defendant's Reply

In reply, Defendant Empire asserts that Plaintiffs' memorandum in opposition indicates that

---

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.* at p. 5.

[60] *Id.*

"they are no longer pursuing a claim against Empire, as the insurer of Mr. Hart," for alleged damages stemming from the publishing of the music video.[61] According to Defendant, "[t]hat leaves the sole cause of action as a trespass claim."[62]

Defendant Empire argues that in their opposition, Plaintiffs claim for the first time that "'the trespass was somehow an 'accidental trespass.'"[63] According to Defendant Empire, "[t]here is no allegation of an 'accidental' trespass in the Complaint (if such a thing exists) and it is too late to allege it now as the cut off for amending the Complaint has long since passed."[64]

Furthermore, Defendant Empire points out that "[i]n support of this new claim of 'accidental trespass' the plaintiffs rely on a document entitled 'Call Sheet.'"[65] "Empire objects to this exhibit as there is no proper foundation or authentication of the document."[66] Citing plaintiffs' testimony, Defendant Empire asserts that plaintiffs "found this document 'balled up' on their lawn after the trespass."[67]

Finally, Defendant Empire contends that "if [plaintiffs] are going to claim the defendants were 'accidentally' on the plaintiffs' property, they must prove that."[68] Defendant Empire maintains that Plaintiffs cannot make this showing:

---

[61] Rec. Doc. 121 at p. 1.

[62] *Id.* at p. 2.

[63] *Id.*

[64] *Id.*

[65] *Id.* (citing Rec. Doc. 117-1).

[66] *Id.*

[67] *Id.* at p. 3.

[68] *Id.*

> Even if the Call Sheet were somehow admitted into evidenced over Empire's objection, it does not prove what plaintiffs are alleging. It appears plaintiffs **assume** that 'LOCATION #1 1102 Chaucer Street, New Orleans, La. 70127" was where the defendants intended to shoot the rap video and they 'accidentally wound up at the plaintiff's [sic.] house at 5139 Easterlyn Street. There is no similarity in the house numbers (11012 vs 5139) and/or street names (Chaucer vs Easterlyn) that might explain how the defendants 'accidentally' wound up on the plaintiffs' property.[69]

Defendant Empire asserts that "[a]ssuming 11012 Chaucer Street was where they intended to shoot the part of the video portraying the rapper giving a house to his mother (a big assumption), it is just as likely (if not more likely) that <u>someone</u> decided that they like the plaintiffs' house better . . . ."[70] According to Defendant Empire, "plaintiffs admit that they do not know how the rappers came to their house to film the rap video."[71]

### III. Standard on a Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[72] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[73] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[74] If the record, as a whole,

---

[69] *Id.* (emphasis in original).

[70] *Id.* (emphasis in original).

[71] *Id.* at p. 4.

[72] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[73] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[74] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

11

could not lead a rational trier of fact to find for the non-moving party, then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[75]

The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[76] If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[77] The nonmoving party can then defeat the motion for summary judgment by either countering with sufficient evidence of its own or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party."[78] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[79]

### III. Law and Analysis

#### A. Remaining Claims

In the Complaint, Plaintiffs assert a claim for damages pursuant to the Latham Act of 1946,[80] as well as Louisiana state law causes of action for misappropriation, unjust enrichment, trespass to land, and intrusion on seclusion.[81] In their Memorandum in Opposition to Defendant Empire's Motion for

---

[75]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[76]*Celotex*, 477 U.S. at 323.

[77]*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991).

[78]*Id.* at 1265.

[79]*See, e.g., Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[80] Rec. Doc. 1 at ¶ 14. In particular, Plaintiffs assert that Defendants have violated the portion of the Act codified at 15 U.S.C. § 1125(a). *See id.*

[81] *Id.* at ¶¶ 24–28.

Summary Judgment, Plaintiffs explain that not all of these claims apply to Defendant Empire, as the insurer of Defendant Hart. Plaintiffs represent that they "do not allege that Empire or Mr. Hart distributed material in violation of statutes."[82] Plaintiffs further state that they "make no claim in connection with 'Personal and Advertising Injury.'"[83] Moreover, Plaintiff devote their memorandum to discussing Defendants' intent in entering their property, and they conclude that "[e]vidence has been presented in support that Hart's actions represented an occurrence under the policy whereby property damage was sustained."

In light of these representations, it appears that the claim asserted against Defendant Empire, as the insurer of Defendant Hart, is for trespass, and that the claims for a violation of the Latham Act, misappropriation, unjust enrichment, and intrusion on seclusion are not applicable here. Accordingly, the Court will only analyze the summary judgment issue based on a claim of trespass.

## B. Applicable Law

It appears from the current pleadings that the only remaining claim against Defendant Empire is in trespass, a state law claim. This Court's subject matter jurisdiction over the state law claims asserted in the Complaint, including the trespass claim, was invoked pursuant to 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[84] When a claim in a case arises under state law, the

---

[82] Rec. Doc. 122 at p. 4.

[83] *Id.* at pp. 4–5.

[84] 28 U.S.C. § 1367(a).

substantive law of that state is applied to resolve the state law related issue.[85] Thus, this Court must apply Louisiana law to resolve matters of substantive law presented in the pending motion and "attempt to discern how Louisiana's highest court would resolve the issues at hand."[86] Although that doctrine is equally applicable when a federal court is "[a]ddressing an unsettled area of Louisiana law," federal courts should "avoid creating new rights and remedies in Louisiana state law where [the court] lack[s] express statutory authority or clear directive from the Louisiana Supreme Court."[87]

### D. Trespass under Louisiana Law

"The tort of trespass is defined as the unlawful physical invasion of the property of another."[88] Thus, "a defendant who enters the plaintiff's property without permission is guilty of a trespass . . . ."[89]

Here, the parties do not dispute that Defendant Hart, the insured, entered Plaintiffs' property without permission. In its statement of undisputed material facts, Defendant Empire acknowledges that on October 8, 2009, "Mr. Bagneris went to the property and saw one person on his roof with a number of other people (the lighting crew and others) in his yard."[90] Furthermore, Defendant Empire admits that "Mr. Bagneris called the police and two people (Gabriel Hart and Taj Lewis, both residents of another state) were arrested and taken to jail while the lighting crew (locals) were issued citations to appear for trespassing."[91] Similarly, in its memorandum in support of the Motion for Summary Judgment, Defendant Empire states that "[o]bviously, the other named defendants used the plaintiffs'

---

[85] *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)

[86] *In re Whitaker Const. Co. Inc.*, 411 F.3d 209, 209 n.4 (5th Cir. 2005) (citing *Erie*).

[87] *Id.*

[88] *Terre Aux Boeufs Land Co., Inc. v. J.R. Gray Barge Co.*, 2000-2754 (La. App. 4 Cir. 11/14/01), 803 So.2d 86, 94, *writ denied*, 01-3292 (La. 3/8/02), 811 So.2d 887; *see also* Frank L. Maraist and Thomas C. Galligan, *Louisiana Tort Law* 2-30 (2004).

[89] Frank L. Maraist and Thomas C. Galligan, *Louisiana Tort Law* 2-31 (2004).

[90] Rec. Doc. 115-4, Defendant's Statement of Undisputed Material Facts, at ¶ 5.

[91] *Id.* at ¶ 6.

14

house without the plaintiffs' permission."[92]

The key issue here is whether the insurance policy that Defendant Empire issued to Defendant

Hart provides coverage for any damages related to this trespass.

## C. Interpretation of Insurance Policies

Under Louisiana law, "a policy of insurance is a contract between the parties and as between

them constitutes the law of the case governed by the rules of interpretation for such agreements."[93] The

policy at issue here states that Defendant Empire "will pay those sums that the insured becomes legally

obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance

applies."[94] However, the policy contains an "Exclusions" section, which provides:

> 2.    Exclusions
>       This insurance does not apply to:
>    a.    Expected Or Intended Injury
>          "Bodily injury" or "property damage" expected or intended from the standpoint
>          of the Insured.[95]

In *Williams v. City of Baton Rouge*,[96] the Louisiana Supreme Court addressed a similar

insurance provision,[97] and set out the proper framework for analyzing whether an intentional injury

exclusion is applicable. The court explained that "[a]s with any exclusion in an insurance policy, the

---

[92] Rec. Doc. 115-1 at p. 13.

[93] *LeBlanc v. Davis*, 223 So. 2d 862, 863 (La. 1969); *see also Crabtree v. State Farm Ins. Co.*, 93-C-0509 (La. 2/28/94); 632 So. 2d 736, 741 ("An insurance policy is a contract between the parties and should be construed using the general rules of interpretation set forth in the Civil Code.").

[94] Rec. Doc. 115-3, "Commercial General Liability Coverage Form," at p. 1.

[95] *Id.* at p. 2.

[96] 98-1981 (La. 4/13/99), 98-2024 (La. 4/13/99), 731 So. 2d 240.

[97] The policy at issue in *Williams* provided: "The company agrees to indemnify the insured for all sums for which the insured shall become obligated to pay as damages, direct or consequential, and expenses, all as hereinafter defined as included within the term ultimate net loss, by reason of liability . . . imposed upon the insured by law . . . because of personal injury, property damage, or advertising liability caused by or arising out of an occurrence which takes place during the policy period. . . ." The policy defined "occurrence" as "an accident, including a continuous or repeated exposure to conditions, which results, during the policy period, in a personal injury, property damage, or advertising liability neither expected nor intended from the standpoint of the insured. . . ."

insurer bears the burden of proving that the intentional injury provision is applicable."[98] "Exclusions must be narrowly construed and any ambiguity should be construed in favor of coverage."[99]

According to the Louisiana Supreme Court, "[t]he purpose of the intentional injury provision is 'to prevent an insured from acting wrongfully with the security of knowing that his insurance company will 'pay the piper' for the damages.'"[100] "[N]ot all injuries resulting from an intentional act will be excluded, but only those injuries that were themselves intended."[101] To determine whether an injury is intended, the court must look to (1) "[t]he subjective intent of the insured," and (2) the insured's "reasonable expectations as to the scope of his insurance coverage."[102] With respect to prong one, the subjective intent of the insured, the court in *Williams* stated that "an act is intended if the perpetrator desires the results of his action or he believes that the results are substantially certain to occur."[103] Turning to prong two, the insured's reasonable expectations as to the scope of coverage, the court explained that:

> . . . when minor bodily injury is intended, and such results, the injury is barred from coverage. When serious bodily injury is intended, and such results, the injury is also barred from coverage. When a severe injury of a given sort is intended, and a severe injury of any sort occurs, then coverage is barred. But when minor injury is intended, and a substantially greater or more severe injury results, whether by chance, coincidence, accident, or whatever, coverage for the more severe injury is not barred.[104]

Thus, applying the test set out in *Williams*, the Court first looks to whether the damages, if any, sustained by Plaintiffs were intended by Defendant Hart—*i.e.*, did Defendant Hart desire the results of

---

[98] *Id.* at 253 (quoting *Great Am. Ins. Co. v. Gaspard*, 608 So.2d 981, 984 (La. 1992)).

[99] *Id.* (quoting *Great Am. Ins. Co.* at 984).

[100] *Id.* (quoting *Breland v. Schilling*, 550 So.2d 609 (La. 1989)).

[101] *Id.* (quoting *Yount v. Maisano*, 627 So.2d 148, 152 (La. 1993)).

[102] *Id.* (citing *Yount, Great Am. Ins. Co.*, and *Breland*).

[103] *Id.* (citing *Yount, Great Am. Ins. Co.*, and *Breland*).

[104] *Id.* (quoting *Yount*, 627 So.2d at 152).

his actions or believe that the results were substantially certain to occur. Second, the Court considers Defendant Hart's reasonable expectation as to the scope of his insurance coverage. Defendant Empire, as the party seeking summary judgment, bears the initial responsibility of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact with respect to these two questions.

Here, Defendant Empire has not met this responsibility. In its memorandum, Defendant Empire does not offer specific evidence of Defendant Hart's intent with respect to the results of his actions, nor does Defendant Empire point to evidence of Defendant Hart's reasonable expectations as to the scope of his insurance coverage. Instead of coming forward with evidence of its own, Defendant Empire misstates the burden of proof, putting the onus on Plaintiffs: "[i]f they are going to claim the defendants were 'accidentally' on plaintiffs' property, they must prove that."[105] However, as the Louisiana Supreme Court made clear in *Williams*, the insurer—in this case, Empire—bears the burden of showing that the intentional injury exclusion applies.

---

[105] Rec. Doc. 121 at p. 3.

## IV. Conclusion

Because the Court finds that there is a genuine issue of material fact as to whether Defendant Hart desired the results of his actions or believed that the results were substantially certain to occur, and as to Defendant Hart's reasonable expectations regarding the scope of coverage under the policy issued by Defendant Empire,

**IT IS HEREBY ORDERED** that Defendant Empire's Motion for Summary Judgment is **DENIED.**

**NEW ORLEANS, LOUISIANA**, this   18th   day of November, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

18